# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

TAMI R. McCOY,

      Plaintiff,

    v.                                  Case No. 2:17-cv-191
                                          JUDGE GEORGE C. SMITH
                                          Magistrate Judge Vascura

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## OPINION AND ORDER

Plaintiff, Tami R. McCoy ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 10). For the following reasons, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

    **I.**      **BACKGROUND**

Plaintiff filed her application for Title II Social Security Benefits on April 5, 2013, alleging that she had been disabled since April 1, 2013 due to having been born without a thyroid, mood disorder, and weakness in her legs that limits her mobility. (Doc. 10, Administrative Record ("AR") at 133–46). On November 19, 2015, following initial administrative denials of Plaintiff's application, a hearing was held before Administrative Law Judge Timothy G. Keller (the "ALJ"). (*Id.* at 881–91). The ALJ determined that updated medical records were required, and the case

was continued. (*Id.* at 889–90). A second hearing was held before the ALJ on March 17, 2016. (*Id.* at 892–906).

At the second hearing, Plaintiff, represented by counsel, appeared and testified. Plaintiff testified that she had for several years been working 20 hours per week at Taco Bell. (*Id.* at 895). Taco Bell would give her additional hours each week if she asked, but she had for several years had problems with her knees that prevent her from standing for long periods and do not permit her to work longer than a four-hour shift in a day. (*Id.* at 896). She typically sits for five minutes out of each four-hour shift, with additional "little breaks" when permitted by her shift manager. (*Id.* at 900). She drives herself to work and back, which takes approximately 25 minutes each way. (*Id.* at 901). At home, her inability to stand for long periods causes difficulty completing tasks like washing dishes, cooking and laundry without taking frequent breaks. (*Id.* at 898, 900). She lives with her husband, who helps around the house, but he also must take breaks due to his own disability. (*Id.* at 901). Her hobbies include coloring adult coloring books. (*Id.* at 902).

Vocational Expert Eric Pruitt (the "VE") also testified at the second hearing. (*Id.* at 902–05). The VE classified Plaintiff's past relevant work as housekeeping and fast food worker, both light, unskilled positions. (*Id.* at 903). The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[1] to the VE. (*Id.* at 903). The VE testified that Plaintiff would not be able to return to either of her previous past relevant work positions. (*Id.* at 904).

On April 18, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 17–32). The ALJ noted that Plaintiff met the insured status requirements through December 31, 2019. (*Id.* at 17). At step one of the sequential

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity during the period from her alleged onset date of April 1, 2013, through the date of the second hearing. (*Id.* at 19). The ALJ found at step two that, through the date of the second hearing, Plaintiff had the severe impairments of thyroid disorder, left heel spur and plantar fasciitis post-surgery, cervical degenerative disc disease, obesity, degenerative changes of the bilateral knees, and affective and anxiety disorders with borderline intellectual functioning. (*Id.* at 20).

The ALJ concluded at step three that Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). He specifically identified Listings 1.02, 1.04, 9.0, 12.04, 12.05, and 12.06 as Listings he considered. (*Id.*). With respect to Listing 12.05, the ALJ concluded that Plaintiff did not satisfy the paragraph C criteria because "[Plaintiff] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (*Id.* at 22).

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to lift, carry, push and pull twenty pounds

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> occasionally, ten pounds frequently; stand and walk for four of eight hours; sit for six of eight hours; occasionally use left foot controls; occasionally climb, stoop, crouch, kneel, and crawl. Mentally, [Plaintiff] retains the ability to understand, remember, and carry out simple repetitive tasks, maintain attention and concentration for two hour segments over an eight hour work period, respond appropriately to supervisors and co-workers, adapt to simple changes and avoid hazards in a setting without strict production quotas.

(*Id.* at 22).

As to Plaintiff's alleged mental impairments, the ALJ assigned "significant weight" to the mental assessments of the State agency psychological consultants, "with the exception of the requirement for only superficial interaction with others." (*Id.* at 29). The ALJ determined that

> [t]his limitation is not supported by objective evidence in the record (Exhibits 1A, 3A, 18F, 12E). [Plaintiff] has reported no problems getting along with anyone but one supervisor at a past job. She has reported getting along with family and friends. She has nearly continuously worked at Taco Bell throughout the period of alleged disability.

(*Id.* at 29). Relying on the VE's testimony, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. He therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 31).

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

Plaintiff raises four issues in her Statement of Errors (Doc. 9):

(1) The ALJ erred in his step three analysis of Listing 12.05C;

(2) The ALJ's decision does not contain an exhibit list as required by HALLEX I-2-1-20, depriving Plaintiff of her due process rights;

(3) The ALJ's findings are internally inconsistent; and

(4) The ALJ's weighing of State agency expert opinions is not supported by substantial evidence.

The Court will address each of these issues in turn.

**A.  Analysis of Listing 12.05C**

To satisfy Listing 12.05, a claimant must first satisfy the diagnostic description applicable to all intellectual disabilities under § 12.05, namely, that she experiences "significantly subaverage

general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Next, the claimant must satisfy the criteria of any one of Listing 12.05's Paragraphs A, B, C, or D. *Id.* Here, Plaintiff challenges only the ALJ's findings as to Paragraph C, which requires that (a) she has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (b) she suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; *West v. Com'r Soc. Sec. Admin.*, 240 F. App'x 692, 697–98 (6th Cir. 2007). The claimant must demonstrate that her impairments meet the diagnostic description and both prongs of Paragraph C to satisfy Listing 12.05C. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

As to the Paragraph C criteria, the ALJ noted that "[Plaintiff] received a full scale IQ of 70, a verbal performance IQ of 72, and a performance IQ of 68 on the WAIS-IV in 1992" when she was 21 years of age. (AR at 22, 175). And "[i]n cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00D(6)(c). There is thus no question that Plaintiff meets the first Paragraph C criterion.

However, the ALJ concluded that Plaintiff did not meet the second Paragraph C criterion because she did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." (*Id.* at 22). He primarily based this conclusion on Plaintiff's maintaining full-time employment continuously from 2001 through 2012 and part-time employment continuously thereafter. (*Id.* at 22, 203). The ALJ reached this conclusion

despite noting that Plaintiff "reduced her hours due to physical impairments" (*i.e.*, her inability to stand for long periods of time due to problems with her knees). (*Id.* at 22).

This portion of the ALJ's analysis of Listing 12.05C is not supported by substantial evidence. The second Paragraph C criterion requires *either* a physical *or* mental impairment that significantly limits Plaintiff's work-related functioning; yet the ALJ appears to have erroneously limited his consideration to Plaintiff's mental impairments. While her mental impairment may not, on its own, have significantly limited Plaintiff's work-related functioning, that is not what Paragraph C requires.

The ALJ already determined in step two that Plaintiff had multiple severe impairments including "degenerative changes of the bilateral knees" (*Id.* at 20), and he could only have concluded that this impairment was "severe" for step two purposes if it "significantly limits [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Logically, if Plaintiff's degenerative changes of the bilateral knees significantly limit her physical ability to do basic work activities, they must also significantly limit Plaintiff's work-related functioning as required by Paragraph C. Accordingly, the ALJ's own earlier findings demonstrate that Plaintiff meets the Paragraph C criteria.

However, this error in analyzing the Paragraph C criteria was ultimately harmless, because there is substantial evidence to support the ALJ's finding that "the record does not support deficits in adaptive functioning" as required by the diagnostic description for Listing 12.05. (AR at 22). Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication skills, and daily living skills. *West*, 240 F. App'x at 699 (citing *Heller v. Doe by Doe,* 509 U.S. 312, 329 (1993). The Sixth Circuit has upheld ALJ determinations that claimants lack deficits in adaptive functioning when claimants are able to, *e.g.*, work, do household chores,

manage their finances, take public transportation, interact with friends and family, and care for their daily needs. *E.g.*, *West*, 240 F. App'x at 698; *Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 587 (6th Cir. 2013); *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009). While Plaintiff is correct that the plain language of Listing 12.05 does not identify how severe limitations must be to qualify as "deficits in adaptive functioning," case law from the Sixth Circuit and other federal courts suggest that deficits must be relatively significant to satisfy the Listing. *Robinson v. Comm'r of Soc. Sec.*, No. 2:13-CV-530, 2014 WL 3419309, at *8 (S.D. Ohio July 10, 2014) (Deavers, M.J.) (collecting cases), *report and recommendation adopted*, No. 2:13-CV-530, 2014 WL 4748483 (S.D. Ohio Sept. 23, 2014) (Sargus, J.).

In evaluating Plaintiff's adaptive functioning, the ALJ relied on Plaintiff's successful graduation from high school, her regular earnings through the present, and stated that "[e]vidence reveals that she is able to engage in substantial activities of daily living." (*Id.*). Additionally, in evaluating criteria for Paragraph D of Listing 12.05 (which findings Plaintiff does not challenge), the ALJ noted that

> The claimant reported activities of cooking, cleaning, and doing laundry. She reported shopping in stores and online. She also reported caring for her son when he stays with them and attending his games. Other activities included reading, watching television, playing sports, listening to music, caring for pets, coloring, and talking to others on the phone. The claimant has also been working part-time, reduced from full-time, during the period of alleged disability. Although the claimant was on temporary leave at the time of the second hearing, the claimant reported normally working four days a week for twenty hours a week and driving twenty-five minutes to and from work. She reported not being able to pay attention long, having difficulties with concentration, and not handling stress or changes in routine well.

Plaintiff's abilities are similar to those of claimants determined by the Sixth Circuit to lack deficits in adaptive functioning. The Court therefore finds that there is substantial evidence to support the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal the severity of Listing 12.05C.

**B.     Exhibit list required by HALLEX § I-2-1-20**

The Hearings, Appeals, and Litigation Law ("HALLEX") manual "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council, and Civil Actions Levels." HALLEX § I-1-0-1. If the ALJ issues an unfavorable decision, he must prepare a final exhibit list to protect the claimant's due process rights. HALLEX § I-2-1-20(B)(3). The purpose of the exhibit list is to identify for the claimant the information the ALJ relied on when making the decision. *Id.* "When an ALJ issues a less than fully favorable decision, preparing the exhibit list in final form is mandatory and is not a discretionary practice." *Id.*

"It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Generally, however, federal courts review decisions of administrative agencies for harmless error. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654–55 (6th Cir. 2009). Accordingly, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983).

The Commissioner does not dispute that the ALJ did not provide an exhibit list in final form after he issued an unfavorable decision. However, the Commissioner correctly points out that Plaintiff has made no attempt to demonstrate prejudice from this technical violation. Indeed, Plaintiff's counsel specifically stated at the second hearing that he had no objections to the exhibit list then available (consisting of Exhibits 1A through 28F, along with additional documents Plaintiff provided at the second hearing that were marked as "next in line in the F section"), and Plaintiff does not argue that the final exhibit list would in any way differ from that available at the

hearing. (AR at 895). Further, throughout the ALJ's written decision, he cited to the administrative record and indicated each record on which he relied at each step of the sequential evaluation. Thus, Plaintiff had notice of the exhibits relied upon by the ALJ and any error resulting from the ALJ's failure to provide an exhibit list in final form was harmless. *See*, *e.g.*, *Pearson v. Colvin*, No. 2:14-CV-26, 2015 WL 3757122, at *31 (N.D.W.Va. June 16, 2015) (failure to provide HALLEX exhibit list in final form was harmless error when plaintiff's counsel had opportunity to review and did not object to exhibit list at hearing, and ALJ's decision cited exhibits relied upon).

## C. Internal inconsistencies in the ALJ's findings

Plaintiff argues that the ALJ's findings are internally inconsistent because he determined that Plaintiff has moderate difficulties in social functioning at step and three of the sequential analysis (AR at 21), yet failed to include any limitations in social functioning when assessing Plaintiff's residual functional capacity ("RFC") at step four. (AR at 22). The Commissioner argues that no such restrictions were necessary because Plaintiff had demonstrated her ability to respond appropriately to supervisors and co-workers through her many years of continuous employment.

An ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work:

> The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.

*Griffeth v. Comm'r*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks and citations omitted). Thus, the ALJ's finding that Plaintiff has moderate difficulties in social functioning did not automatically require the inclusion of limitations on social functioning in Plaintiff's RFC.

10

Further, the ALJ concluded that no such restrictions were necessary because Plaintiff worked successfully for many years with co-workers, supervisors, and the public. (AR at 22, 26). Plaintiff was continuously employed from 2001 through the date of the second hearing, first at a hotel during 2001–2005 and then at two different Taco Bell locations during 2005–2016. (*Id.*). During these years, Plaintiff reported only one incident in which she had trouble getting along with a supervisor at her hotel job in 2005; otherwise she had no difficulty getting along with co-workers and supervisors. (*Id.* at 22, 26, 282). Given Plaintiff's lack of documented work-related social functioning difficulties, the ALJ's omission of any restriction on social functioning from Plaintiff's RFC is supported by substantial evidence.

### D. Weighing of State agency expert opinions

Similarly, Plaintiff argues that the ALJ erroneously discounted the portions of the State agency psychological consultants' opinions that recommended "only superficial interactions with others." (AR at 29). While State agency psychological consultants are "are highly qualified . . . psychologists . . . who are also experts in Social Security disability evaluation," ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(e)(2)(i). Instead, the ALJ evaluates the State agency psychological consultant's findings using the relevant factors laid out in 20 C.F.R. § 404.1527, "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii).

Here, the ALJ specifically considered the opinions of State psychological consultants Drs. Fernandez and Goldsmith, who performed psychological assessments of Plaintiff on August 13, 2013 and February 14, 2014, respectively. (AR 33–47, 388–405). Both consultants determined that Plaintiff was "moderately limited" in her ability "to interact appropriately with the general

public." (*Id.* at 44, 403). By way of explanation, both consultants included the following identical remarks: "She reports some problems with anxiety, for example losing track of what she is doing if someone is watching her do it. She does not socialize with friends. She can interact superficially with others." (*Id.* at 44, 404).

The ALJ determined that Drs. Fernandez and Goldsmith's recommendations that Plaintiff be limited to superficial interaction with others was unsupported by the record. (*Id.* at 29). In particular, her continuous work history over many years, with only one reported problem with a supervisor at a previous job in 2005, suggest that Plaintiff is capable of interacting with others without restriction. (*Id.*). While Plaintiff faults the ALJ for focusing on her work history to the exclusion of social difficulties in other areas, the ALJ was evaluating Plaintiff's RFC for the purposes of employment. Thus, her work history is especially relevant to determining any necessary restrictions. Even though she may not socialize with friends, this has not negatively affected her ability to work continuously during the period of disability. Therefore, the ALJ's decision to give little weight to the State agency psychological consultants' recommendations regarding superficial interactions with others was supported by substantial evidence.

## IV. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner of Social Security's decision.

The Clerk shall remove Document 12 from the Court's pending motions list and enter final judgment in favor of Defendant.

**IT IS SO ORDERED.**

               */s/ George C. Smith*
               **GEORGE C. SMITH, JUDGE**
               **UNITED STATES DISTRICT COURT**